[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13439

Non-Argument Calendar

_____

JAMES ANTHONY BRIAN MORELOCK,

Plaintiff-Appellant,

*versus*

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cr-00211-AT-CMS-1

_____

Before GRANT, LUCK, and WILSON, Circuit Judges.

PER CURIAM:

In 2019, federal agents executed a search warrant at James Morelock's residence and found a stockpile of firearms. All told, agents discovered nine handguns, nine rifles, and four shotguns. And that is to say nothing of the four sets of body armor and gun silencer they also found. This discovery was a problem for Morelock because, as a felon, he cannot possess a firearm. *See* 18 U.S.C. § 922(g)(1).

At his bench trial, Morelock admitted that he knowingly possessed firearms at his residence. But he insisted that the statute prohibiting him from doing so, 18 U.S.C. § 922(g)(1), is unconstitutional. The district court disagreed and found him guilty. It sentenced Morelock to a year and a day in prison—a fifty-one-month downward variance from the Sentencing Guidelines—followed by three years of supervised release.

Morelock now appeals his conviction and sentence, making three arguments along the way. *First*, that § 922(g)(1) is unconstitutional as applied to him. *Second*, that his prior conviction for attempted armed bank robbery and kidnapping is not a "crime of violence" under the Sentencing Guidelines. *Third*, and finally, that the district court erred in denying his motion to suppress the evidence found at his home.

We are unpersuaded. Because Morelock's first two arguments are foreclosed by our precedents and his third is unsupported by the record, we affirm his conviction and sentence.

## I.

In the fall of 1996, James Morelock and his co-conspirators broke into a family's home and held them hostage at gunpoint. Clad in military-style fatigues, combat boots, and plastic masks, Morelock's crew told one of the hostages that if she did not help them rob a bank, they would kill her family. This threat was credible given that the intruders were armed with two pistols, a sawed-off shotgun, and (for good measure) an Uzi-style machine gun with a silencer. Once the would-be robbers arrived at the bank, however, they changed their mind and decided not to commit the heist after all. For this Morelock was convicted of attempted armed bank robbery with kidnapping. *See* 18 U.S.C. § 2113(a), (d), (e). He was released from prison in late 2010.

About a decade later, an anonymous informant submitted an online tip to the FBI warning that Morelock "might be up to something again." She explained that Morelock had shown her multiple firearms and "SWAT-style" body armor.

When federal investigators followed up with the online tipster, she denied making the tip. But she did identify a relative of Morelock's for investigators to question. And that relative corroborated the online tip, telling investigators that he was confident Morelock had body armor and several firearms in his

possession.  The relative said that he saw Morelock "physically possess" the guns less than four months ago.

A few weeks later, federal investigators interviewed another one of Morelock's relatives.  This relative also corroborated the online tip.  Based on "firsthand knowledge," he believed that Morelock was in possession of body armor and multiple firearms as recently as a month ago.

Two days after agents interviewed this second relative, they executed a search warrant at Morelock's residence.  The search was fruitful.  Agents discovered (among other things) twenty-two firearms, four sets of body armor, and a silencer.  Morelock moved to suppress this evidence, arguing that the affidavit was flawed. The magistrate judge denied the motion.

At trial, Morelock conceded that he possessed firearms but contended that 18 U.S.C. § 922(g)(1) is unconstitutional.  The district court rejected that argument and found him guilty.

Morelock now appeals his conviction and sentence.

## II.

Several standards of review govern this appeal.  We review the constitutionality of a statute de novo.  *United States v. Bolatete*, 977 F.3d 1022, 1032 (11th Cir. 2020).  Whether an offense qualifies as a "crime of violence" under the Sentencing Guidelines is also a question that we review de novo.  *United States v. Estrada*, 777 F.3d 1318, 1321 (11th Cir. 2015) (per curiam).  In evaluating the district court's denial of Morelock's motion to suppress, we "review the

22-13439          Opinion of the Court          5

district court's findings of fact under the clearly erroneous standard and its application of law to those facts de novo." *United States v. Morley*, 99 F.4th 1328, 1336 (11th Cir. 2024). And we generally review a district court's denial of an evidentiary hearing for abuse of discretion. *United States v. Barsoum*, 763 F.3d 1321, 1328 (11th Cir. 2014).

**III.**

Morelock raises three arguments on appeal. None is persuasive.

*First*, Morelock argues that § 922(g)(1) is unconstitutional after the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). But we rejected this very argument in *United States v. Dubois*, 94 F.4th 1284 (11th Cir. 2024). There, we explained that our precedents upholding the constitutionality of § 922(g)(1) remain good law after *Bruen*. *See Dubois*, 94 F.4th at 1291–93. So Morelock cannot prevail on this ground.

*Second*, Morelock contends that his prior conviction for attempted armed bank robbery with kidnapping in violation of 18 U.S.C. § 2113(a), (d), and (e) is not a "crime of violence" under the Sentencing Guidelines. He patterns his challenge on *United States v. Taylor*, which clarified that attempted Hobbs Act robbery does not qualify as a crime of violence. *See* 596 U.S. 845, 851–52 (2022). Again, our precedent forecloses this argument.

We recently explained that attempted bank robbery under § 2113(a) is a crime of violence because "it requires as an element that the defendant acted 'by force and violence, or by intimidation'

in committing the inchoate crime." *United States v. Armstrong*, 122 F.4th 1278, 1291 (11th Cir. 2024) (quoting 18 U.S.C. § 2113(a)). We pointed out that the Hobbs Act is "structured differently" than § 2113(a) because it "does not require any actual or threatened force to sustain a conviction." *Id.* at 1289. While "a criminal can commit an attempted Hobbs Act robbery without actually using force or violence," that is not the case for an attempted bank robbery under § 2113(a). *See id.* at 1290 (citing *Taylor*, 596 U.S. at 851–52). That is because § 2113(a) criminalizes "*only* attempts that occur 'by force and violence, or by intimidation.'" *Id.*

*Third*, and finally, Morelock maintains that the district court should have granted his motion to suppress the evidence obtained from his home. He contends that the federal agent's affidavit was faulty, which means that the search warrant was not supported by probable cause. Morelock also adds that, at the very least, the court should have ordered a hearing to "assess material omissions from the affidavit."

Not so. Probable cause for a search warrant exists if, "given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Trader*, 981 F.3d 961, 969 (11th Cir. 2020) (alteration adopted and quotation omitted). Given the circumstances here, the district court correctly found that the government's affidavit established a "fair probability" that there were firearms at Morelock's home. *See id.*

The government's affidavit was supported by three separate informants. To begin, an anonymous informant submitted a tip through the FBI website stating that Morelock had shown her firearms and body armor that he kept at his home. When federal agents tried to follow up with this online informant, she denied ever making the tip. But she did identify one of Morelock's relatives for agents to interview. And that relative confirmed that he had personally seen Morelock clean three firearms in his home within the last several months. Federal agents received further corroboration when another one of Morelock's relatives told them that Morelock kept firearms and body armor in his home. This second relative reported firsthand knowledge that there were firearms in Morelock's residence as recently as a month before the statement. The two relatives offered matching descriptions of the firearms and body armor inside the residence.

These tips provided enough detailed, verifiable information to establish a fair probability that there were firearms in Morelock's home. *See United States v. Martin*, 297 F.3d 1308, 1314–15 (11th Cir. 2002). And the information in the tips was not stale—two firsthand observations of Morelock possessing firearms in his home are sufficient to establish probable cause that he would still be in possession of those firearms a few months later. *See United States v. Anton*, 546 F.3d 1355, 1358 (11th Cir. 2008).

Finally, the district court did not err in finding that Morelock failed to make a "substantial preliminary showing" that the government intentionally or recklessly omitted material

information from its affidavit.  *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).  Morelock first argues that the affidavit should have disclosed that "multiple people who could legally possess firearms" lived with him at the home.  It did.  The affidavit stated that Morelock resided "with his wife, children, and brother."

Morelock adds that the affidavit should have also mentioned that the two relatives who spoke with federal agents were, in fact, relatives of his half-brother, and that this half-brother was locked in a dispute with Morelock's father over ownership of Morelock's residence.  As a result, Morelock says, these informants had an "obvious motive to fabricate accusations against the current occupants of the house."  But he provides zero evidence that federal agents knew or should have known of this family feud.  And without such knowledge, that information could not have been intentionally or recklessly omitted from the affidavit.

★    ★    ★

We **AFFIRM** Morelock's conviction and sentence.